

# THE ATTORNEY GENERAL

## OF TEXAS

### Austin 11, Texas

**WILL WILSON**
**ATTORNEY GENERAL**

October 18, 1961

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin 11, Texas

Opinion No. WW-1169

Re: Whether the Comptroller has the
authority to make refunds from
the Suspense Account to certain
persons who paid taxes under the
provisions of the unconstitutional
"Severance Beneficiary Gas Tax
Act" under the various fact
situations stated.

Dear Mr. Calvert:

By recent letter you have posed certain questions regarding refund
of protested tax payments under the unconstitutional Severance Beneficiary
Gas Tax Act (Article 22.01 et seq., Title 122A, Taxation-General, Revised
Civil Statutes of Texas). You advise that the tax payments were deposited
to the suspense account as "protested items" in conformance with the pro-
test statute (Article 1.05, Title 122A, Taxation-General, Revised Civil
Statutes of Texas, formerly 7057b, V.C.S.). You describe four different
factual situations pertaining to the protested payments; we quote from your
letter:

[1]     "American Smelting and Refining Company, and
others, properly instituted suit within ninety (90)
days after date of the protested payments, however
as to some subsequent amendments of the suit the
Attorney General raised by a special exception the
issue that the amendments had not been properly
made, since they sought to incorporate by reference
certain allegations of the original petitions and of
prior amendments. After the Severance Beneficiary
Tax was declared unconstitutional, American

Smelting and Refining Company, and the others dismissed their law suits, relying on Attorney General Opinion No. S-130, dated June 25, 1954, and requested me to refund these moneys by virtue of the provisions of Article 4388, Revised Civil Statutes of Texas. All the moneys paid under protest have remained in the suspense account.

[2]     "A slightly different set of facts is involved with respect to some of the money paid under protest. In these cases, the moneys paid under protest were and are still held in suspense, and the suits were timely filed, but the Attorney General filed special exceptions to the petitions and amended petitions, taking the position that suit was not filed in the court in Travis County having jurisdiction of the amount involved. These cases, too, were dismissed and the taxpayers have requested me to refund, under the provisions of Article 4388, their moneys held in suspense.

"Under the above stated facts, I will appreciate it if you will advise me whether or not I can legally make the refunds from the suspense account.

"If your answer to the above question is in the affirmative, I will appreciate your opinion based on the following facts.

[3]     "The taxpayer paid the tax under protest and the moneys were placed in the suspense account by me, as required by the protest statute. The petitions and amended petitions were timely filed, however, several of the amended petitions refer to a lesser amount of tax than was actually paid under protest. The taxpayer has accepted judgment based on the amount of tax included in his suit and the amended petitions. Please advise me whether or not I have the authority to refund the amount of tax not included in the amended petitions and which is still in the suspense account.

[4]     "A taxpayer paid the tax under protest and the

money placed by me in the suspense account, as required by the protest statute. The suits were timely filed but one or more of the amended petitions were not filed within ninety (90) days from date of payment of some of the tax included in the amended petitions. The taxpayer has accepted judgment after excluding the amounts in which amended petitions were filed after ninety (90) days from date of payment of the tax. The amounts excluded are still in the suspense account.

"Please advise me whether or not I have authority to refund these amounts to the taxpayer."

Article 4388 provides in pertinent part:

"The State Treasurer shall receive daily from the head of each Department, each of whom is specifically charged with the duty of making same daily, a detailed list of all persons remitting money the status of which is undetermined or which is awaiting the time when it can finally be taken into the Treasury, together with the actual remittances which the Treasurer shall cash and place in his vaults or in legally authorized depository banks, if the necessity arises . . . . A deposit receipt shall be issued by the Comptroller for the daily total of such remittances from each Department; and the Cashier of the Treasurer's Department shall keep a cashbook to be called 'Suspense Cash Book,' in which to enter these deposit receipts, and any others issued for cash received for which no deposit warrants can be issued or when their issuance is delayed. As soon as the status of money so placed with the Treasurer on a Deposit Receipt is determined, it shall be transferred from the Suspense Account by placing the portion of it belonging to the State in the Treasury by the issuance of a Deposit Warrant, and the part found not to belong to the State shall be refunded. . . . " (Emphasis supplied).

In regard to Article 4388, the Court in Daniel v. Richcreek, 118 S.W.2d 935 (Civ. App., 1938) stated at page 937:

"The Article is explicit in requiring the 'transfer' to be made 'as soon as' which necessarily implies 'not before' the 'status' of the money is 'determined.' Clearly the word 'status' includes every essential fact to its proper disposition, from the viewpoint of the Treasurer, its then custodian. If it should belong to the State, it must be deposited in the Treasury by means of a 'Deposit Warrant.' If it does not belong to the State, it must be 'refunded' by means of a 'refund warrant.' Ascertainment of the 'status' of the money involves determination of the proper payee of such 'Refund Warrant.' Ordinarily 'refund' means to pay back, thus implying that the payment is to be made to the party from whom received. Such party was the Racing Commission, concededly now defunct. Independently of this fact, we think, contexually, the prescribed 'refund' means to the party legally entitled to demand and receive it from the Treasurer." (Emphasis supplied).

Attorney General's Opinion No. V-143 had the following to say with regard to Article 4388 and the Richcreek case:

"We think a proper construction of the foregoing provision of Article 4388, as to the meaning of 'the status of the money' is whether it is State money or subject to be refunded, as it should be if it does not belong to the State. We believe a careful examination of Daniel v. Richcreek, 118 S.W.2d 936 [sic] (Austin C.C.A.) confirms this construction." (Emphasis supplied).

Attorney General's Opinion No. V-1204 held that money held in suspense may be refunded under Article 4388 although not actually paid under protest, if such money was paid under compulsion or duress.

Attorney General's Opinion No. WW-277 held that if the Comptroller should determine that a decedent had been domiciled in California rather

than in Texas, inheritance taxes collected by The State of Texas should be refunded under the provisions of Article 4388, although such taxes apparently were not paid under protest.

Opinion No. S-130, rendered by this office on June 25, 1954, furnishes direct authority for an affirmative answer to the questions here presented. The question there posed was whether a taxpayer initially pursuing his remedy under Article 7057b, V.C.S., could abandon such a suit and seek to have tax payments refunded by virtue of Article 4388, V.C.S. In holding that the Comptroller should make refund of such tax payments, the Opinion stated:

> "There exists only one 'Suspense Account' administered by the Treasury Department. Tax funds are deposited into this account for one of two reasons: (1) either the funds were paid under the protest statute and are required by law to be placed in suspense, or (2) the head of the collecting department cannot determine the status of funds paid without protest to the State.

> "Article 4388 permits State departments to deposit collected moneys of undetermined status into the Suspense Account. Upon the determination of the status of these moneys by the department head, the portion belonging to the State is deposited into the Treasury and the balance is refunded to the proper party."

From the facts set forth in your letter, it appears that all tax payments described (1) are held in suspense, (2) were involuntarily paid and (3) do not belong to the State. Therefore, in view of the foregoing authorities, you are advised that you are not only authorized, but are obligated to make refunds of such moneys from the Suspense Account to the parties legally entitled thereto.

## SUMMARY

Under the authority of Article 4388, V.C.S., the Comptroller of Public Accounts must refund moneys paid under the unconstitutional "Severance Beneficiary Gas Tax Act" and held in the

Suspense Account to the parties legally entitled thereto.

Yours very truly,

WILL WILSON
ATTORNEY GENERAL OF TEXAS

By JACK N. PRICE
Assistant Attorney General

JNP:nb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman

Arthur Sandlin
John Reeves
W. Ray Scruggs
Grady Chandler

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Houghton Brownlee, Jr.